**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| ROSALIE SMILEY,<br>Plaintiff,<br>v.<br>CAROLYN W. COLVIN,<br>Acting Commissioner of<br>Social Security,<br>Defendant. | **CIVIL ACTION**<br>No. 14-1233-MLB |

**Memorandum and Order**

This is an action reviewing a final decision of the Commissioner of Social Security denying plaintiff disability insurance benefits.

**I. General Legal Standards**

The court's standard of review is contained in 42 U.S.C. § 405(g), which provides in part that "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive,..." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F.Supp. 1045, 1047 (D.Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that she has a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents her from engaging in substantial gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that she is not only unable to perform her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.[1] 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find

[1] This standard applies regardless of whether such work exists in the immediate area where the individual lives, or whether a specific job vacancy exists for her, or whether she would be hired if she applied for work. 42 U.S.C. § 423(d)(2)(A).

non-disability unless the claimant can show that she is not working at a “substantial gainful activity.” At step two, the agency will find non-disability unless the claimant shows that she has a “severe impairment,” which is defined as any “impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities.” At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do her previous work; unless the claimant shows that she cannot perform her previous work, she is determined not to be disabled. If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487. Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to

evaluate the claim at both step four and step five. 20 C.F.R. § 404.1520(a)(4); 404.1520(f, g).

**II. History of the case**

Plaintiff sought disability benefits beginning January of 2009 based on impairments including degenerative disk disease (DDD) and related pain. She received a favorable decision from an ALJ on September 23, 2011. After that initial ruling, the Continuing Disability Investigations Unit (CDI) submitted a report containing evidence that plaintiff had engaged in physical activities inconsistent with the evidence at the initial hearing and inconsistent with the residual functional capacity (RFC) determined by the ALJ. The ALJ held a supplemental hearing and considered the CDI report but again issued a favorable decision for plaintiff.

The Appeals Council reviewed the decision on May 11, 2012. Doc. 5 at 201-204. Among other things, the Council found that the ALJ gave inconsistent consideration to the CDI report. The Council further found the ALJ’s ruling was not supported by substantial evidence and did not follow proper procedures for reopening a prior decision based upon fraud or similar fault. The Council remanded with directions to assign the case to another ALJ.

On remand, ALJ Deborah Van Vleck held a hearing and issued a written decision on November 2, 2012. After considering the evidence, including a CDI surveillance video of plaintiff, the ALJ concluded the video made it apparent that plaintiff could do various thing she had previously claimed not to be able to do, including:

> [W]alking and standing with ease without an assistive device; walk through a large farm with uneven surfaces while wearing flip flops shoes

> and without an assistive device for over 15 minutes; climbing over bars; [lean] against a wall with one leg ... propped up; step up stairs without difficulty; get up from a seated position with a baby in her arms; stand continuously for almost 20 minutes while holding a baby estimated to weigh 12-16 pounds and occasionally use one arm to point or make a phone call; bend and reach for a medium sized garbage bag and lift and carry the garbage bag; bending over on several occasions; bend and crouch down into a catcher-like stance; reach into the bed of a pickup truck and lift up a baby walker; walk backwards; step up into her truck and drive her truck for at least 10 minutes; sit for several minutes on a low-seated sidewalk step; and squatting down.

Doc. 5 at 20-21.

The ALJ noted that at plaintiff's initial hearing, the prior ALJ had relied primarily on the opinions of plaintiff's treating physician Reddy Katta, M.D., and chiropractor Michelle Robin, whom the first ALJ had mistakenly characterized as a medical doctor.[2] Katta had opined that plaintiff was able to lift and carry less than 5 pounds frequently and 5 pounds occasionally; stand/walk less than 15 minutes continuously and for a total of 2 hours in an 8-hour day; sit for less than 15 minutes and for a total of 2 hours in an 8-hour day; minimally (if at all) push and/or pull; occasionally climb, balance and reach but never stoop, kneel or crawl; and must lay down every hour. After Katta was shown portions of the CDI video, however, he told CDI agents that it changed his opinions about plaintiff's limitations and indicated that she did not appear disabled. In a subsequent letter, Katta summarized plaintiff's treatment history and noted that from the

---

[2] Chiropractors are not acceptable medical sources for establishing the existence of medically determinable impairments. 20 C.F.R. § 404.1513(a). They are classified as "other sources" from which evidence may be provided to show the severity of an impairment and how it affects a claimant's ability to work. § 404.1513(d).

video he “felt like she is not in any distress doing the tasks she is doing like getting in and out of the truck or picking up her grandbaby or bending over.” Katta also subsequently completed a questionnaire from plaintiff’s representative indicating that plaintiff could do the activities indicated on the video when her pain was controlled with medication, that her pain would return when the medication wore off, and that at times she would need her cane or a walker.[3]

A follow up report by the CDI also disclosed that plaintiff had taken a long road trip during her alleged period of disability (in March 2010), driving from Kansas to Corpus Christi, Texas and back (16 hours each way). Other evidence, including plaintiff’s testimony, showed that plaintiff also took a seven day road trip in August 2010 with her daughter to Arkansas; in March 2011, she flew with her daughter to Cabo San Lucas, Mexico, for six days; in March 2012, she drove over eight hours with her daughter from Kansas to Dallas; and in July 2012 she again drove with her daughter from Kansas to Dallas.

After considering all of the foregoing evidence, the ALJ determined that plaintiff’s case should be reopened and that she had obtained her previous favorable decision through fraud or similar fault:

> [T]he undersigned finds that the claimant either intentionally made incorrect or incomplete statements and/or intentionally concealed information that was material to the determination of the claimant’s disability. The

[3] After the CDI report was first presented, plaintiff testified that Katta had told her he felt intimidated by the CDI agent and signed the paperwork even though he did not want to. The first ALJ apparently credited this testimony, finding that Katta “was intimidated by the investigator and did not have the opportunity to think through the answers he gave....” Doc. 5 at 196.

> undersigned finds that such falsehoods and misrepresentations by the claimant were intended to obtain Social Security benefits under false pretenses, and therefore intended to commit fraud against the Administration. As an example, the claimant's statements that she could not carry more than five pounds was clearly contrary to claimant's actual abilities as demonstrated by the CDI video taken a mere three weeks after the hearing; surely the claimant did not make such a miraculous improvement with such a short time period. Indeed all of the above inconsistencies regarding the claimant's stated abilities versus her demonstrated abilities as seen on the CDI video and other evidence in the record indicate that the claimant made blatantly false and/or incomplete statements to both the ALJ and her doctors, which were in turn relied on by the ALJ in finding the claimant disabled. Even if the claimant's medications alleviated her pain and therefore enhanced her abilities, the claimant must assess her abilities with the effects of medication. Additionally, the claimant's statements were undoubtedly material because the ALJ relied on Dr. Katta's and Ms. Robins's opinions in making her determination, and from their opinions, the ALJ determined that the claimant was disabled.

Doc. 5 at 22.

After noting the Social Security Act required her to disregard evidence if there was reason to believe fraud was involved in the providing of it, the ALJ found that any evidence conflicting with plaintiff's demonstrated abilities as indicated by the CDI video would be disregarded, including the opinion of Katta in Exhibit 6F and the opinion of Michelle Robin in 5F. The ALJ did not disregard Katta's opinion that plaintiff sometimes requires the use of a cane/walker depending on the severity of her pain, although the ALJ was "highly skeptical" that plaintiff actually required the use of such a device.

At step one, the ALJ found that plaintiff did not engage in substantial gainful activity from her alleged onset date of January

1, 2009, through her last-insured date of March 31, 2009. At step two, she found plaintiff had the following severe impairments as of her last insured date: (1) degenerative disk disease of the lumbar spine; and (2) degenerative joint disease of the bilateral knees. At step three, the ALJ found that plaintiff’s impairments did not meet or equal any of the listed impairments in the regulations.

The ALJ next determined that plaintiff has the residual functional capacity (RFC) to perform sedentary work except that she requires brief position changes every 30 minutes, together with certain other limitations including only occasional climbing of stairs, no climbing ladders, occasional stooping or kneeling, no operating a motor vehicle, and not working in extreme cold, humidity or vibration. Doc. 5 at 26.

At step four, the ALJ found plaintiff was capable of performing her past relevant work as a graphic artist and desktop publisher, as that work did not require activities precluded by plaintiff’s RFC. Accordingly the ALJ concluded plaintiff was not under a disability as defined by the Social Security Act.

**III Discussion**

1. Disregard of Katta’s and Robin’s opinions. Plaintiff claims the ALJ erred in disregarding Katta’s and Robin’s opinions. Plaintiff contends that under the applicable standard, “the ALJ had to show that Dr. Katta and Robin formulated their opinions with the intent to knowingly mislead the Commissioner.” Doc. 7 at 8. Because there was no such evidence, plaintiff argues the ALJ had an obligation to consider and weigh these opinions under the Social Security Act and the regulations.

Section 405(u)(1)(A) of Title 42 provides that the Commissioner shall immediately redetermine the entitlement of an individual to benefits if there is reason to believe that fraud or similar fault was involved in the application for such benefits.[4] When redetermining entitlement, the Commissioner "shall disregard any evidence if there is reason to believe that fraud or similar fault was involved in the providing of such evidence." 42 U.S.C. § 405(u)(1)(B).

Contrary to plaintiff's preposterous suggestion, nothing in § 405(u)(1)(B) requires a showing that plaintiff's doctor or chiropractor themselves acted with fraudulent intent before their opinions can be disregarded. The statute requires the Commissioner to disregard any evidence if there is reason to believe that fraud "was involved in" the providing of the evidence. This does not require an ALJ to accept evidence procured by fraud simply because the claimant managed to fool a medical provider who in good faith relied upon false information. Cf. Soc. Sec. Ruling 00-02p, 2000 WL 253695 ("Adjudicators may disregard evidence based on 'similar fault' of a claimant, a recipient of benefits, or any other person connected with the claim. * * * A 'similar fault' finding can be made only if there is reason to believe ... that the person committing the fault knew that the evidence provided was false or incomplete."). Fraud is still "involved in" the providing of a medical opinion if it was the product of a doctor's unwitting reliance upon materially false information

[4] "Similar fault" is involved when an incorrect or incomplete statement that is material to the determination is knowingly made, or if information that is material to the determination is knowingly concealed. 42 U.S.C. § 405(u)(1)(B)(2). See also 42 U.S.C. § 1383(e)(7)(B).

knowingly provided by a claimant. That is essentially what the ALJ found with respect to Katta's and Robin's opinions, as plaintiff "made blatantly false and/or incomplete statements to both the ALJ and her doctors." Doc. 5 at 22. In turn the ALJ implicitly found that the opinions of Katta and Robin were based upon plaintiff's false or incomplete statements about her pain and physical limitations. Doc. 5 at 22. That conclusion is bolstered by substantial evidence, including Katta's reaction to the CDI video, in which he acknowledged that it changed his opinion and that he felt plaintiff "was not in any distress" doing tasks that were clearly beyond the limitations he had previously determined.

The ALJ disregarded Katta's and Robin's opinions to the extent they were inconsistent with plaintiff's demonstrated abilities on the video and with plaintiff's ability to take extended car and airplane trips. The court finds no error in that determination. Section 405(u) required the ALJ to disregard any evidence to the extent there was fraud involved in the providing of it, and substantial evidence supported the ALJ's view that these opinions were a product of plaintiff's intentionally false statements or knowing concealment of her abilities. Moreover, even if this court were to consider the ALJ's disregard of these medical opinions to be error, any such error would have to be considered harmless. The ALJ's findings leave no doubt that she considered the opinions to be outweighed to the extent they contradicted abilities plainly shown by the surveillance video and the balance of the evidence. <u>See</u> <u>e.g.</u>, Doc. 5 at 16 ("The above outlined activities are abilities that Dr. Katta and the claimant alleged ... she could not do. * * * [A]ll of the above inconsistencies regarding

the claimant's stated abilities versus her demonstrated abilities on the CDI video and other evidence in the record indicate that the claimant made blatantly false and/or incomplete statements to both the ALJ and her doctors,..."). Cf. Keyes-Zachary v. Astrue, 695 F.3d 1156, 1163 (10th Cir. 2012) (applying harmless error analysis).

Plaintiff also argues that the decision must be reversed because, although the ALJ did in fact consider Katta's opinion that plaintiff at times needed a cane or walker depending upon her pain level, the ALJ did not adopt such a limitation in determining plaintiff's RFC nor did she address it in determining whether plaintiff was capable of performing her past relevant work. But as the Commissioner points out, the ALJ had substantial evidence from which to conclude that such a limitation was not supported by the record. The ALJ considered all the evidence in this regard, including evidence of Katta's opinion that plaintiff could walk without a walker when her pain was controlled by medication and evidence that plaintiff's pain symptoms were manageable with medication. See Pickup v. Colvin, ___ Fed.Appx. ___, 2015 WL 1515460 (10th Cir. 2015) (if medication effectively reduces the operative symptoms, that fact can weigh against claimant); Wiley v. Chater, 967 F.Supp. 446, 451 (D. Kan. 1997) ("If an impairment can be reasonably controlled by treatment or medication, it cannot be considered disabling.") [citation omitted].

The ALJ also cited the CDI video showing plaintiff ambulating easily without any assistive device and evidence from a neighbor that in the three years he had lived next to plaintiff he had never seen her have difficulty walking or use a walker or cane. Moreover, plaintiff has not explained how the occasional need for a walker or

cane is inconsistent with the RFC determined by the ALJ or with the ALJ's finding that plaintiff could perform her past relevant work in the sedentary category (i.e. graphic artist and desktop publishing), which by definition required only occasional walking or standing. See 20 C.F.R. § 404.1567(a); Huizar v. Astrue, 2012 WL 3631526, *5 (C.D. Cal. 2012)(plaintiff cites no authority for the proposition that occasional use of a cane would preclude an RFC for sedentary work); Boyd v. Astrue, 2011 WL 3652299, *2 (D. S.C. 2011). Plaintiff has not shown the ALJ erred or that a remand is required.

2. ALJ's assessment of plaintiff's credibility. Plaintiff's second argument is that the ALJ did not properly analyze her credibility. Plaintiff contends the ALJ erred by disregarding any evidence that conflicted with plaintiff's actions on the CDI video. She contends the ALJ had an obligation to consider and weigh all of the evidence in assessing her credibility.

Complaints of disabling pain are evaluated using the three-step analysis set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987). Under Luna, the ALJ is required to consider and determine (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged (i.e., a "loose nexus"); and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling. See Keyes-Zachary v. Astrue, 695 F.3d 1156, 1166-67 (10th Cir. 2012).

Plaintiff alleges the ALJ failed to engage in the third step because she improperly disregarded any evidence that conflicted with the CDI video. But this argument overstates what the ALJ did. Although

it is true she said she was disregarding "any evidence" that conflicted with the video, the ALJ's opinion makes clear enough that she meant any evidence tainted by plaintiff's false or incomplete statements to her doctors and also plaintiff's testimony to the extent it was inconsistent with the video and other evidence. As discussed above, that was not error. The ALJ was required by law to disregard evidence when there was reason to believe fraud was involved in the providing of it. Nothing in the ALJ's opinion indicates that she failed to consider the evidence falling outside of that category. She adequately explained that her findings regarding plaintiff's credibility included not only the video but other evidence in the record. For example, the ALJ noted that plaintiff testified she had quit her prior job because of pain, although in a doctor's note plaintiff was quoted as saying she was no longer working because "they have no work for her." The evidence of plaintiff's extensive road trips, according to the ALJ, "call[s] into question claimant's allegation that she [can] only sit for 15 minutes at a time and that she requires the use of a cane or walker,..." Doc. 5 at 28. Plaintiff said that she needed a walker or cane at times, although a neighbor never saw her have difficulty walking or use a walker or cane in the three years that he lived next to her.  There was other evidence as well in the record undermining plaintiff's credibility, but of course the ALJ was not obligated to comment upon all of the evidence in her opinion.  "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence, provided the determinations are closely and affirmatively linked to that evidence." Adams ex rel.

D.J.W. v. Astrue, 659 F.3d 1297, 1302 (10th Cir. 2011). The ALJ's credibility determination here was supported by substantial evidence and was tied to the record.

Finally, the CDI video itself was properly considered by the ALJ as significant evidence diminishing plaintiff's credibility. (As Chico Marx once asked, "Who you gonna believe, me or your own eyes?") Plaintiff attempts to discount the significance of the video because, she argues, "activities of daily living generally do not constitute evidence that an individual can perform competitive work on a full-time basis. Doc. 7 at 16 (citing Krauser v. Astrue, 638 F.3d 1324, 1332-33 (10th Cir. 2011)). But unlike Krauser, the ALJ in this instance specified the activities that plaintiff was able to engage in (as demonstrated on the video), and those activities were inconsistent with the significant physical limitations claimed by plaintiff and reflected in the medical source statements of Katta and Robin. In evaluating the credibility of a claimant's statements regarding pain, an ALJ should consider an individual's daily activities; the location, duration, frequency, and intensity of the pain; the dosage and effectiveness of medications taken to alleviate pain; and any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Hamlin v. Barnhart, 365 F.3d 1208, 1220 (10th Cir. 2004). The ALJ considered those factors under the evidence presented and did not err in her assessment of plaintiff's credibility.

**IV. Conclusion.**

The decision of the Commissioner denying disability benefits is affirmed.

IT IS SO ORDERED.

Dated this  8th   day of July 2015, at Wichita, Kansas.

                                      s/Monti Belot

                                      Monti L. Belot

                                      UNITED STATES DISTRICT JUDGE